**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| USADATA Incorporated,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>DataWidget LLC, et al.,<br><br>　　　　　Defendants. | No. CV-21-00526-PHX-DLR<br><br>**ORDER** |

This order concerns the validity of the '557 patent ("Patent"), owned by Defendant DataWidget LLC and licensed to Defendant E-Printwerx International. (Doc. 20 ¶¶ 12-13.) Because the Patent's claims constitute an unpatentable abstract idea, the Court finds the Patent invalid.

**I.  Background**

　　**A.  The Patent**

The Patent, issued in 2018, is titled "System and Method for Selling Customer-Specific Data Subsets on a Third-Party Website Using a Web Widget." (Doc. 1 at 4; Doc 1-6 at 2.) Its first and only independent claim sets out "[a] system for searching and purchasing data subsets from a data seller" and comprises three main components: (1) an ecommerce vendor, (2) a data seller, and (3) a data extraction widget. (Doc. 1-6 at 13.)

The Patent defines the individual components. The "ecommerce vendor" is a printing services vendor with a website and an "ecommerce server configured to operate

the ecommerce website, the ecommerce servicer comprising a first processor and a first memory." (*Id.*) The "data seller" maintains a database with geographic and demographic data and hosts a "database server" with a "second processor and a second memory." (*Id.*) The "lynchpin" of this system is the data extraction widget, which is a "portable chunk of code" that can be "written in any computer readable language" and is "installed and executed within any separate HTML-based web page without requiring additional compilation." (*Id.*) It facilitates direct connections with the (1) the ecommerce server, (2) database server, and (3) "between the database server and the ecommerce server." (*Id.* at 13.)

The Patent offers a "Sandwich Shop/Web-to-print" example of how the components function together. A sandwich shop owner wants to run a targeted mail campaign by designing and sending postcards to all residents within five miles of the sandwich shop. (*Id.* at 10.) The owner finds an ecommerce vendor selling printing services, but the vendor lacks its own database of residents within five miles of the sandwich shop. (*Id.* at 10.) However, a third-party data seller has a database that can be searched to obtain that specific data subset. (*Id.*)

> Using the data seller widget, the customer [sandwich shop] accesses the data seller's database via server, obtains a list of residents within a five mile radius of the customer's shop and then uses that mailing list to send out custom postcards through the web-to-print site. Preferably, the customer pays for the data subset (in this case the names and addresses) during checkout at the web-to-print site and the data seller and web-to-print vendor can settle their accounts at the same or subsequent time. Throughout the process, the customer need not know that a third-party data seller is involved. (*Id.*)

### B. Factual and Procedural History

Plaintiff USADATA Inc. produces software plugins. (Doc. 1 ¶¶ 53-55.) Starting in September 2019, DataWidget sent letters to three USADATA customers, accusing them of infringing the Patent by using USADATA plugins. (*Id.*) DataWidget sued another USADATA customer using USADATA plugins, alleging it had infringed the Patent as well. (*Id.* ¶ 60.)

Plaintiff filed a complaint against Defendants, asking the Court to declare the Patent invalid, among other things. (Doc. 1.) Plaintiff has now moved for judgment on the pleadings on its invalidity claim. (Doc. 29.) Defendants responded (Doc. 33) and Plaintiff replied (Doc. 37). The motion is now ripe.

**II. Standard**

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) "is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Fajardo v. Cty. of L.A.*, 179 F.3d 698, 699 (9th Cir. 1999). And patent eligibility ultimately presents questions of law, although it may contain underlying questions of fact. *Synchronoss Techs., Inc. v. Dropbox, Inc.*, 987 F.3d 1358, 1365 (Fed. Cir. 2021). "Rule 12(c) is 'functionally identical' to Rule 12(b)(6) and . . . 'the same standard of review' applies to motions brought under either rule." *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (quoting *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)). Thus, a motion for judgment on the pleadings will be granted if the complaint lacks "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

**III. Analysis**

Patent eligibility extends to "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. A patent is presumed valid, and the burden of establishing invalidity lies with the challenging party, 35 U.S.C. § 282(a), who may show invalidity by an analysis of a single representative claim, *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014). Plaintiff challenges the Patent as a patent-ineligible abstract idea. A two-step inquiry governs whether a patent claim is "abstract idea."[1] *Alice Corp.*

---

[1] Because the *Alice* analysis resolves patent eligibility, the Court does not reach Plaintiff's argument that the Patent encompasses human beings or entities/organizations. (Doc. 29 at 14-15.)

1 *Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216, 217, 219 (2014).

### A. *Alice* Step One

Step one asks whether the "character" of the claims "in their entirety" are "directed to" a patent-ineligible concept," like an "abstract idea." *Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, 873 F.3d 1364, 1371 (Fed. Cir. 2017). In that inquiry, courts look to whether the claims "focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery. *Id.* (cleaned up). If the Court determines that the Patent is not directed toward an abstract idea, the analysis ends; otherwise, the analysis proceeds to step two. *Alice Corp.*, 573 U.S. at 221

The Patent is directed to an abstract idea. Functionally, as Plaintiff argues, the data extraction widget exchanges information with and between a vendor of geographic and demographic data and a printing service. (Doc. 1-6 at 10.) This exchange is not new. As far back as the pre-Civil War era, humans have acquired geographic and demographic data and used a printing service to reach a targeted audience. *See* Nancy Pope, "America's First Direct Mail Campaign," Smithsonian National Postal Museum (July 29, 2010), https://postalmuseum.si.edu/node/1912. And the Patent's own example of a sandwich shop owner comports with this historical practice of targeted, direct mailers. (Doc. 1-6 at 10.) Defendants admit as much in their answer, characterizing the Patent as "a system for selling individually-tailored customer-specific data subsets (for example mailing lists used in direct-mail campaigns)." (Doc. 2 ¶ 14.) The Patent essentially computerizes a longstanding economic practice. *Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324 (Fed. Cir. 2016) (holding that processes that have been performed by humans without the use of computers are abstract ideas).

Defendants argue that the Patent is not directed toward an abstract idea because it uses the word "system" several times and the Patent Office determined that the arrangement of the components "is neither anticipated nor rendered obvious over the totality of the available art." (Doc. 33 at 9, 11.) But Defendants have cited no legal

authority to buttress these arguments, and existing caselaw offers them no quarter. For starters, the word "system" is no incantation, magically protecting patents from *Alice* challenges. The substance of claims outweighs the mere "form of the asserted claims." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 n.4 (Fed. Cir. 2014).

The examiner's statements do not help the Defendants. As a threshold matter, "[a]n examiner's statements about a patent are not themselves evidence of a patent's validity." *Fitbit Inc. v. AliphCom*, No. 16-CV-00118-BLF, 2017 WL 3129989, at *2 (N.D. Cal. July 24, 2017). And these statements are irrelevant because they refer to a materially different version of the claims that did not issue and is not at bar. (*Compare*, *with* Doc. 1-6.) The statements specifically address the data seller widget's use of an Application Programming Interface ("API"), a commonplace protocol for exchanging information. (Doc. 33-2 at 159-62.) And mere information exchange is an abstract idea, even when performed by computers or otherwise technologically restricted. *Content Extraction*, 776 F.3d at 1348. The Patent is thus directed to an abstract idea, and the analysis must proceed to step two.

**B.** *Alice* **Step Two**

Step two asks whether the claims, despite being directed to an abstract idea, nevertheless contain an inventive concept that transforms the nature of the claim into a patent-eligible application of the abstract idea. *Alice Corp.*, 573 U.S. at 221. The inventive concept must "ensure that the claim is more than a drafting effort designed to monopolize the abstract idea," *id.* (cleaned up), and it must be a "specific technical solution beyond simply using generic computer concepts in a conventional way," *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1352 (Fed. Cir. 2016).

Plaintiff argues that none of the components are inventive concepts because they implement conventional protocols. (Doc. 29 at 12.) The Court agrees. The Patent claims a system that employs a database, servers, processors, and memory, all of which the Patent describes as "well-known in the art." The components perform generic functions: exchanging information, permitting printing services, and charging the customer for the transaction. (Doc. 1-6 at 13.) Even the "lynchpin" data extraction widget does not amount

to an inventive concept because it is merely a "portable chunk of code" that can be "written in any computer readable language" and is "installed and executed within any separate HTML-based web page without requiring additional compilation." (*Id.* at 10.) Such generic language does not reveal an inventive concept. *Internet Pats. Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) (explaining that routine and conventional activities are not inventive concepts).

Defendants point to the examiner's statements to argue that that the *arrangement* of the components constitutes the inventive concept. (Doc. 33 at 13-14.) But this Court is not required to grant this statement much weight—nor does it deserve weight. *See Interactive Wearables, LLC v. Polar Electro Oy*, 501 F. Supp. 3d 162, 183 (E.D.N.Y. 2020). The arrangement's purported inventive concept is that the data extraction widget directly connects with the claims components "to charge the customer for data extracted from the database and for printing services provided by the ecommerce vendor in a single transaction." (Doc. 33-2 at 21.) This arrangement, the examiner asserts, "is neither anticipated nor rendered obvious over the totality of the available prior art." (*Id.*) Not so. Two-way electric communication is common, and, as noted above, the widget accomplishes these connections by standard means. *See Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016) (explaining that "off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information" was patent ineligible). The Court detects no inventive concept in Defendants' claims.

**IV. Conclusion**

The Court finds that the claims set out in the Patent are impermissibly directed toward an abstract idea, and thus the Patent is invalid under *Alice*. Moreover, because this judgment hinges entirely on the patent claims themselves, amendment would be futile, and the Court denies leave to amend. *See Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015).

1 **IT IS ORDERED** that Plaintiff's motion for judgment on the pleadings (Doc. 29)
2 is **GRANTED** as to the invalidity claim only.
3   Dated this 29th day of October, 2021.

Douglas L. Rayes
United States District Judge